Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| LIZA CABÁN H/N/C OPTIMUS PROPERTY SOLUTION<br><br>Recurrida<br><br>v.<br><br>ALEJANDRO BRITO, BDG, LLC, ROTONDA HOMEOWNERS ASSOCIATION, INC. Y OTROS<br><br>Peticionarios | KLCE202401083 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso número: SJ2024CV04174<br><br>Sobre: Incumplimiento de Contrato, Daños |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece la parte peticionaria, Alejandro Brito, BDG, LLC y Rotonda Homeowners Association, Inc., mediante el recurso de epígrafe y nos solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 22 de agosto de 2024, notificada al día siguiente. Mediante el referido dictamen, el foro primario declaró No Ha Lugar la moción de desestimación, promovida por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado.

**I**

El 8 de mayo de 2024, Liza M. Cabán h/n/c/ Optimus Property Solution (recurrida) incoó una *Demanda* sobre incumplimiento de contrato y daños y perjuicios en contra de Alejandro Brito (Brito), BDG, LLC (BDG) y Rotonda Homeowners

Número Identificador

RES2024 _____

Association, Inc. (Rotonda) (peticionarios).[1] Alegó que las partes formalizaron un contrato y que los peticionarios se negaron, intencionalmente, a cumplir sus prestaciones y obligaciones, según acordado, a pesar de los requerimientos realizados por esta. Arguyó que dicho incumplimiento le causó daños y perjuicios que ascendían a $125,000.00. En vista de ello, solicitó el pago de dicha suma, más costas y honorarios de abogado por la cantidad de $25,000.00, así como el cumplimiento del contrato en cuestión.

Por su parte, los peticionarios presentaron una *Moción Solicitando Exposición Más Definida.*[2] Arguyeron que la acción de epígrafe no contenía alegaciones esenciales, incluyendo las relacionadas a cuándo ocurrieron los hechos sobre los cuales se les imputaba a cada codemandado. Abundaron que tampoco se añadieron alegaciones en torno a las partidas que componían los presuntos daños y perjuicios reclamados. Argumentaron que las alegaciones eran tan genéricas que el tribunal ni siquiera podía hacer una determinación sobre prescripción. Adujeron que, conforme a lo dispuesto en las Reglas 7.3, 7.5 y 10.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 7.3, 7.5 y 10.4, procedía que la parte recurrida aclarara o expusiera de forma más definida las alegaciones esbozadas en la *Demanda,* en torno a: (1) cuál era el presunto incumplimiento de cada codemandado; (2) la fecha en que alegadamente les reclamó a los peticionarios; (3) la cantidad que reclamaba a cada uno de ellos; (4) en qué consistían tales cantidades; y (5) el desglose de las partidas reclamadas por daños y perjuicios.

Atendida la moción, el 12 de julio de 2024, notificada el 15 del mismo mes y año, el Tribunal de Primera Instancia emitió una *Orden*

---

[1] Apéndice del recurso, págs. 45-46.
[2] Íd., págs. 42-44.

mediante la cual declaró Ha Lugar lo solicitado.[3] En su consecuencia, le otorgó un término de diez (10) días a la parte recurrida para que presentara una demanda enmendada con una exposición más definida, so pena de la eliminación de las alegaciones.

En cumplimiento con lo ordenado, el 20 de julio de 2024, la parte recurrida sometió una *Demanda Enmendada*.[4] En lo pertinente, añadió las siguientes alegaciones:

[...]

6. El 17 de septiembre de 2021, la parte demandada, Alejandro Sr. Brito (Brito) *[sic]* [,] hizo [un] contacto con la parte demandante, Sra. Liza M. Cabán, h/n/c, Optimus Property Solution, mediante correo electrónico, interesado en que Optimus Property Solution ofreciera [s]ervicios en la Urb. Rotonda en Guaynabo.

7. La demandante intent[ó] contactarlo, pero no obtuvo respuesta, por lo que envió un mensaje de texto al número proporcionado. Posteriormente, el Demandado (Brito) respondió desde otro número.

8. En la conversación telefónica, el Demandado (Brito) mencionó a la demandada que vivía en el Cond. Reina de Castilla, condominio que la Demandante administra y que estaba impresionado favorablemente con el servicio, por lo que decidió contactarme *[sic]* para que le sometiera una propuesta de administración, contabilidad y mantenimiento.

9. Posteriormente, la Demandante le envió la propuesta sobre los servicios que ofrecía.

10. El 22 de septiembre de 2021, el Demandado (Brito) se comunicó con la Demandante mediante llamada telefónica para aclarar dudas sobre los servicios que ofrecía mi empresa *[sic]* y coordinar una visita a la comunidad de Rotonda, en Guaynabo, P.R., llevándose a cabo el 28 de septiembre de 2021.

11. La Demandante informó al Demandado (Brito) que se encontraba fuera del país por asuntos familiares, y que regresaba el 26 de septiembre de 2021, y que podrían reunirse a partir del lunes[,] 27 de septiembre 2021.

12. El 25 de septiembre de 2021[,] el Demandado (Brito), nuevamente, contact[ó] a la Demandante, mediante textos telefónicos, indicándole que él estaba interesado en que la Demandante comenzara en uno de sus proyectos de [a]dministración, Rotonda[,] y añadiendo *[sic]* que le otorgaría cuatro proyectos adicionales: Finca Elena, Finca Elena Original, Belmont y Bellair, todos en Guaynabo, P.R.

---

[3] Apéndice del recurso, pág. 41.
[4] Íd., págs. 29-32.

13. El 19 de octubre de 2021[,] la Demandante y el Demandado firmaron un "Contrato de Administración, Contabilidad y Mantenimiento" (Contrato) anual con Rotonda Homeowners Association, Inc. (codemandada, Rotonda), una empresa debidamente registrada bajo las leyes del Estado Libre Asociado de Puerto Rico, con el número de ident[i]ficaci[ó]n patronal 88-G918182[,] con oficinas en Guaynabo, Puerto Rico[,] representado por el Demandado (Brito). Ver Exhibit.

14. Conforme al Contrato entre las partes, la compensación a pagar por los servicios de administración de Rotonda era de $1[,]250.00 mensuales. Ver Exhibit[.]

15. El 27 de octubre de 2021, la Demandante le env[ió] [un] mensaje de seguimiento al Demandado (Brito) para comenzar la transición del Proyecto de Administración de Rotonda.

16. Durante el periodo del 15 de noviembre de 2021 a febrero de 2022, la Demandante tuvo comunicación mediante llamadas y correos electrónicos únicamente con el Sr. Roberto Arthur, representante del Demandado (Brito), ya que este [último] no respondía a las llamadas de la Demandante.

17. El 26 de marzo de 2022, la Demandante le env[ió] mensaje de texto al Demandado (Brito) pero no obtiene ninguna repuesta del Demandado.

18. El 29 de marzo de 2022, la Demandante envía otro mensaje de texto al Demandado, pero tampoco obtiene repuesta.

19. Conforme a los hechos antes mencionados, [l]a parte Demandada se negó, intencionalmente, a cumplir sus prestaciones y obligaciones según el contrato[,] a pesar de los requerimientos hechos al efecto por la [p]arte Demandante, [la] cual está en aptitud y disposición de cumplir todas las suyas de acuerdo con dicho contrato. (Énfasis omitido).[5]

Además, la parte recurrida reiteró en la *Demanda Enmendada* que el incumplimiento contractual le había ocasionado daños y perjuicios ascendentes a $125,000.00. Planteó que, al suscribir el contrato en cuestión, tuvo una expectativa genuina de generar ingresos mínimos anuales valorados en dicha cantidad. Ello, ya que la parte peticionaria le había ofrecido la administración anual de varias comunidades y complejos localizados en Guaynabo: Finca Elena Original, Finca Elena, Belmont y Bellair.

Así las cosas, el 23 de julio de 2024, la parte peticionaria instó una *Moción de Desestimación*, al amparo de la Regla 10.2(5) de

---

[5] Apéndice del recurso, págs. 30-31.

Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).[6] En síntesis, arguyó que la *Demanda Enmendada* no exponía hechos que dieran lugar a la concesión de un remedio. Además, adujo que la acción estaba prescrita por tratarse de una relación extracontractual. Especificó que los $125,000.00 reclamados por la recurrida no se basaban en ningún incumplimiento contractual de Rotonda, sino en una alegada "expectativa" de administrar otros complejos, por lo que estábamos ante una supuesta relación extracontractual con un término prescriptivo de un (1) año. Argumentó que los hechos que daban base a la presunta expectativa se remontaban al año 2021, mientras que la acción de epígrafe se incoó en el año 2024, por lo que dicho reclamo estaba prescrito.

Por otro lado, la parte peticionaria sostuvo que, aun leyendo la *Demanda Enmendada* en la forma más favorable para la recurrida, esta no esbozó un acto culposo o negligente que generara una responsabilidad extracontractual. Asimismo, indicó que la acción de epígrafe tampoco contenía ni una sola alegación de hecho en torno a la responsabilidad de BDG. Por tal razón, expuso que procedía la desestimación de la reclamación de la recurrida debido a que la *Demanda Enmendada* dejaba de exponer hechos que dieran lugar a una reclamación de daños y perjuicios.

En respuesta, el 13 de agosto de 2024, la parte recurrida se opuso.[7] Arguyó que no había duda de que suscribió un contrato de administración con Rotonda y que, según alegado, esta incumplió con lo pactado. Propuso que, en caso de duda, el descubrimiento de prueba mostraría si hubo tal incumplimiento. Planteó que, en esta etapa de los procedimientos, era prematuro desestimar la causa de acción, habiéndose firmado un contrato de administración. Particularizó que la expectativa expresada por esta en la *Demanda*

---

[6] Apéndice del recurso, págs. 23-28.
[7] Íd., págs. 19-22.

*Enmendada,* relacionada a otros proyectos de administración, independientemente de no haber sido expresada en el contrato en cuestión, no surgía en el vacío, sino que Brito se lo había expresado y las partes lo habían acordado. Sobre ese particular, argumentó que en Puerto Rico los contratos de servicios profesionales no tenían que constar por escrito. Reiteró que, en el caso de epígrafe, hubo un incumplimiento intencional por los peticionarios a lo previamente acordado, tanto en el proyecto en Rotonda como en los demás complejos, y que ello sería demostrado por el descubrimiento de prueba.

Evaluadas las posturas de las partes, el 22 de agosto de 2024, notificada al día siguiente, el foro primario emitió la *Resolución* que nos ocupa, mediante la cual declaró No Ha Lugar la solicitud de desestimación presentada por los peticionarios.[8] Expresó que, para determinar si surgió una obligación de naturaleza contractual o extracontractual entre las partes, era menester realizar el descubrimiento de prueba correspondiente. Añadió que, de ello, dependerá la procedencia de la defensa de prescripción invocada por la parte peticionaria. Por otro lado, resolvió que las alegaciones esbozadas en la *Demanda Enmendada* eran suficientes y, por tanto, una desestimación, en esta etapa de los procedimientos, sería prematura.

En desacuerdo, el 9 de septiembre de 2024, la parte peticionaria presentó una *Reconsideración,*[9] la cual fue declarada No Ha Lugar por el foro *a quo* el día siguiente.[10]

Inconforme, el 7 de octubre de 2024, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó los siguientes señalamientos de error:

---

[8] Apéndice del recurso, págs. 17-18.
[9] Íd., págs. 7-16.
[10] Íd., págs. 1-2.

Erró el Honorable Tribunal de [Primera] Instancia al determinar que se requiere [un] descubrimiento de prueba para resolver una moción de desestimación.

Erró el Honorable Tribunal de [Primera] Instancia al determinar que lo reclamado en la demanda enmendada no está prescrito.

Erró el Honorable Tribunal de [Primera] Instancia al determinar, a base de alegaciones ajenas a las alegaciones *[sic]*, que la demandante alega hechos que den lugar a la concesión de un remedio.

En cumplimiento con nuestra *Resolución* del 9 de octubre de 2024, la parte recurrida compareció mediante *Oposición a Expedición del Recurso de Certiorari* el 28 del mismo mes y año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la

justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria plantea en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al determinar que se requiere un descubrimiento de prueba para resolver una moción de desestimación. Como segundo señalamiento de error, sostiene que el foro primario erró al determinar que lo reclamado en la *Demanda Enmendada* no está prescrito. Por último, en su tercer error señalado, alega que el foro *a quo* incidió al determinar, a base de las alegaciones ajenas a las esbozadas en la acción enmendada, que la parte recurrida alega hechos que dan lugar a la concesión de un remedio.

Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al declarar No Ha Lugar la solicitud de desestimación promovida por la parte peticionaria, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar los documentos que obran en autos, si bien estamos ante la denegatoria de una moción de carácter dispositivo según contemplado por la Regla 52.1 de Procedimiento Civil, *supra*, concluimos que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 40 de nuestro Reglamento, *supra*.

## IV

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones